Citation Nr: 1522695 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 11-21 115 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent for service-connected asthma prior to February 25, 2011, and a compensable rating thereafter.

2. Entitlement to an initial rating in excess of 10 percent for service-connected loss of sensation of the right hand.

3. Entitlement to an initial rating in excess of 50 percent for service-connected posttraumatic stress disorder (PTSD) with major depressive disorder (MDD). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

N. Sonia, Associate Counsel


INTRODUCTION

The Veteran served on active duty from February 1999 to May 2009.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Baltimore, Maryland.

Consideration of the Veteran's appeal has included review of all documents within the Virtual VA paperless claims processing system and the Veterans Benefits Management System. The documents within these systems include documents relating to the immediate appeal. The documents are considered to be part of the claims file, and as such have been considered as part of the present appeal.

The Board also notes that in an April 2015 brief, the Veteran's representative acknowledged that there was additional medical evidence in the evidentiary record subsequent to the appeal's certification to the Board and that the Veteran waived consideration of such evidence by the Agency of Original Jurisdiction (AOJ). As such, the Board may proceed with adjudication of the Veteran's claims decided herein. See 38 C.F.R. § 20.1304.
 
The issue of entitlement to an initial rating in excess of 50 percent for service-connected PTSD with MDD is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ. VA will notify the appellant if additional action is required on her part.


FINDINGS OF FACT

1. Prior to February 25, 2011, the Veteran reported the intermittent use of inhalational or oral bronchodilator therapy to manage her asthma symptoms. However, from February 25, 2011, forward, the Veteran specifically denied the use of any such inhaler. Also, the Veteran was not shown to have a Forced Expiratory Volume in one second (FEV-1) of 71 to 80 percent predicted or less or the ration of Forced Expiratory Volume in one second to Forced Vital Capacity (FEV-1/FVC) of 71 to 80 percent predicted or less throughout the appeal periods, and the evidence does not show any other inhalational medications or physician visits for required care of exacerbations of asthma. Furthermore, the evidence does not reflect the use of any oral or parenteral systemic corticosteroids throughout the appeal periods.

2. The Veteran's loss of sensation in the right hand has been manifested by no more than mild, incomplete paralysis of the median nerve.


CONCLUSIONS OF LAW

1. The criteria for entitlement to an initial rating in excess of 10 percent for service-connected asthma prior to February 25, 2011, and a compensable rating thereafter, have not been met. 38 U.S.C.A. § 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1- 4.3, 4.7, 4.10, 4.97, Diagnostic Code 6602 (2014).

2. The criteria for entitlement to a rating in excess of 10 percent for loss of sensation of the right hand have not been met. 38 U.S.C.A. § 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1- 4.3, 4.7, 4.10, 4.124a, Diagnostic Code 8599-8515 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Disability evaluations are determined by the application of the schedule of ratings which is based on average impairment of earning capacity. See U.S.C.A. § 1155. Separate diagnostic codes identify the various disabilities. Evaluation of a service-connected disability requires a review of the Veteran's entire medical history regarding that disability. 38 C.F.R. §§ 4.1, 4.2 (2014). When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3 (2014). However, the evaluation of the same disability under various diagnoses, known as pyramiding, is to be avoided. 38 C.F.R. § 4.14. 

When entitlement to compensation has been established and a higher initial evaluation is at issue, the level of disability at the time entitlement arose is of primary concern. Although a rating specialist is directed to review the recorded history of a disability to make a more accurate evaluation, the regulations do not give past medical reports precedence over current findings. 38 C.F.R. § 4.2; Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Consideration must also be given to a longitudinal picture of the Veteran's disability to determine if the assignment of separate ratings for separate periods of time, a practice known as "staged" ratings, is warranted. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. Ap. 119 (1999).

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. § 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

Asthma

The Veteran's asthma has been assigned an initial rating of 10 percent, effective May 28, 2009, under Diagnostic Code 6602. This rating was reduced to 0 percent, effective February 25, 2011, forward. However, the Veteran's combined rating remained the same.

Under Diagnostic Code 6602, a 10 percent rating is assigned for application when forced expiratory volume in one second (FEV-1) is 71-80 percent predicted, or; forced expiratory volume in one second/forced vital capacity (FEV-1/FVC) of 71 to 80 percent, or; intermittent inhalational or oral bronchodilator therapy. 38 C.F.R. § 4.97, Diagnostic Code 6602.

A 30 percent rating is assigned for application when FEV-1 is 56-70 percent predicted, or; FEV-1/FVC of 56 to 70 percent, or; daily inhalational or oral bronchodilator therapy, or; inhalational anti-inflammatory medication. Id. 

A 60 percent evaluation may be assigned when FEV-1 is 40-55 percent predicted, or; FEV-1/FVC of 40-55 percent, or; at least monthly visits to a physician for required care of exacerbations, or; intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids. Id. 

A 100 percent evaluation is warranted when FEV-1 is less than 40-percent predicted, or; FEV-1/FVC is less than 40 percent, or; more than one attack per week with episodes of respiratory failure, or; requires daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications. Id. 

In a September 2008 VA General Medical Examination, the Veteran reported her asthma began in approximately 2006. She stated her symptoms, such as shortness of breath and wheezing, were under "good control" with use of her inhaler (albuterol). The record notes an FEV-1 of 89.1% of predicted value. The examiner concluded that the Veteran's asthma did not have significant effects on her usual occupation or daily activities. 

VA treatment records from December 2010 show the Veteran's asthma was described as stable. She indicated that she had an albuterol inhaler in the past but that she had not needed to use the inhaler for over two years. 

Subsequent VA treatment records from 2011 show the Veteran had a past history of asthma, unspecified.

On February 25, 2011, the Veteran was afforded a VA respiratory examination in which she described a history of dyspnea, non-anginal chest pain, and night sweats. There was less than one clinical visit per year for exacerbations, and the frequency of acute attacks was also described as less than one time per year. The Veteran indicated that she had not used metered-dose bronchodilator inhaler for the past two years, but she had modified her activity to avoid exercise-induced asthma by no longer playing running sports. She reported no time lost from work in the past twelve-month period due to her asthma. Pulmonary function tests showed FEV-1 of 82% predicted post bronchodilator and FEV-1/FVC of 86.7% predicted with no inhalation or oral bronchodilator therapy. 

Therefore, a review of the record shows that prior to February 25, 2011 (the date on which the Veteran's asthma rating was reduced to 0 percent), the Veteran had an FEV-1 value of 89.1. There is no evidence of FEV-1 of 56 to 71 percent predicted or FEV-1/FVC of 56 to 70 percent, so as to warrant an increased rating of 30 percent. The requirements for a rating in excess of 30 percent are also not met.

Moreover, while the Veteran stated in the September 2008 examination that she used an inhaler intermittently to control asthma symptoms as needed, by February 25, 2011, the Veteran specifically denied the use of any inhaler to manage asthma symptoms. Indeed, as early as December 2010, the Veteran stated that she no longer needed to use her inhaler. 

Finally, at no point in either appeal period is there evidence of daily inhalational or oral bronchodilator therapy, or; inhalational anti-inflammatory medication (as required under a 30 percent rating). The evidence also does not show at least monthly visits to a physician for required care of exacerbations, or; intermittent, at least three per year, courses of oral or parenteral systemic corticosteroids (as required under a 60 percent rating). Similarly, the evidence does not show more than one attack per week with episodes of respiratory failure, or; asthma requiring daily use of oral or parenteral systemic high dose corticosteroids or immuno-suppressive medication (as required under a 100 percent rating). 

In other words, prior to February 25, 2011, the evidence shows the Veteran reported the intermittent use of an inhaler to control asthma symptoms, which is contemplated in a rating of 10 percent, but no higher, under Diagnostic Code 6602. However, the Veteran reported as early as 2010 that she no longer used an inhaler to control her symptoms. The evidence also does not show any other inhalational medications or physician visits for treatment based on exacerbations, nor does the record reflect the use of any oral or parenteral systemic corticosteroids prior to February 25, 2011. As such, a compensable rating after February 25, 2011 is not warranted.

Indeed, at the VA examination on February 25, 2011, the Veteran confirmed that she had not used her inhaler for the past two years. Because the evidence also does not show FEV-1 of 71 to 80 percent predicted or FEV-1/FVC of 71 to 80 percent, the Veteran did not otherwise meet the criteria for a 10 percent rating, let alone a higher rating. Again, the evidence from February 25, 2011, forward, does not show any other inhalational medications or physician visits for treatment based on exacerbations, nor does the record reflect the use of any oral or parenteral systemic corticosteroids.

After careful review of the evidence, the Board finds no other diagnostic codes would be appropriate to evaluate the Veteran's asthma. 38 C.F.R. § 4.1, 4.2; Schafrath, 1 Vet. App. at 595. Indeed, the Veteran's symptoms have been diagnosed as asthma, with no indication of any other respiratory conditions being present. 

Based on the foregoing, the Board finds that the preponderance of the evidence is against a rating in excess of 10 percent for service-connected asthma prior to February 25, 2011, and a compensable rating thereafter. Furthermore, there is no basis for further staged ratings of the Veteran's disability. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.159, 4.1-4.16, 4.97, Diagnostic Code 6602; Gilbert, 1 Vet. App. at 49.
 
Right Hand

The Veteran's loss of sensation in the right hand has been assigned a 10 percent rating, effective May 28, 2009, under Diagnostic Code 8599-8515.

Hyphenated diagnostic codes are used when a rating under one code requires use of an additional diagnostic code to identify the basis for the rating assigned. 38 C.F.R. § 4.27. In this case, the use of Diagnostic Code 8599 indicates the condition is unlisted and is rated under a closely related disease or injury, with Diagnostic Code 8515 addressing paralysis of the median nerve.

The rating schedule provides guidance for rating neurologic disabilities. With regard to rating diseases of the peripheral nerves, the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild or, at most, the moderate degree. See 38 C.F.R. § 4.124a.

Specifically, under Diagnostic Code 8515, a 10 percent rating is assigned for mild incomplete paralysis of the median nerve for both the major and minor extremity. See 38 C.F.R. § 4.124a, Diagnostic Code 8515.

Moderate incomplete paralysis of the median nerve warrants the assignment of a 20 percent rating for the minor extremity and a 30 percent rating for the major extremity. Id.

Severe incomplete paralysis warrants the assignment of a 40 percent rating for the minor extremity and a 50 percent rating for the major extremity. Id.

Complete paralysis of the median nerve warrants the assignment of a 60 percent rating for the minor extremity and a 70 percent rating for the major extremity. Id.

Complete paralysis of the median nerve contemplates such symptoms as the hand inclined to the ulnar side, the index and middle fingers more extended than normally, considerable atrophy of the muscles of the thenar eminence, the thumb in the plane of the hand (ape hand); pronation incomplete and defective, absence of flexion of index finger and feeble flexion of middle finger, cannot make a fist, index and middle fingers remain extended; cannot flex distal phalanx of thumb, defective opposition and abduction of the thumb, at right angles to palm; flexion of wrist weakened; and pain with trophic disturbances. Id.

The Board notes that words such as "severe," "moderate," and "mild" are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6 (2014). Although the use of similar terminology by medical professionals should be considered, is not dispositive of an issue. Instead, all evidence must be evaluated in arriving at a decision regarding a request for an increased disability rating. 38 U.S.C.A. § 7104 (West 2014); 38 C.F.R. §§ 4.2, 4.6 (2014). 

The Veteran has undergone several surgeries related to the amputation of the right fourth finger, beginning in 2001. The Veteran has been separately service-connected for amputation of the finger under Diagnostic Code 5155.

The Veteran received private treatment related to his right hand symptoms in 2003 and 2004. Specifically, October 2003 physical therapy notes show the Veteran had increased right hand strength, and 2004 treatment from Hand Surgical Associates shows the Veteran was provided exercises to manage right hand symptoms.

At the September 2008 VA general medical examination, the Veteran reported occasional numbness of the right hand while she was sleeping. She also reported pain and loss of dexterity associated with her amputation. The examiner noted decreased sensation of the right hand, as evidenced by decreased sensation to pinprick of the right hand. 

In April 2011, the Veteran was afforded another VA examination to assess neurological disorders. She reported increased pain with new symptoms of paresthesias and tightness in the previous year. The Veteran described paresthesias lasting approximately fifteen minutes about once per day. She also described tightness in joints of all metacarpal-phalangeal and finger joints about once or twice per week, lasting approximately five minutes in duration.

The sensory examination of the median and ulnar nerves of the right upper extremity showed decreased sensation in the right hand, with stocking distribution at wrist. An electromyography (EMG) study was also performed. The EMG results were normal, with no electrophysiological evidence of a focal or generalized neuropathy in the right upper extremity. The examiner ultimately diagnosed loss of sensation in the right hand and noted present symptoms of neuritis. In terms of occupational effects, the Veteran reported having to leave work early or receive alternative tasks to perform three times in the past year due to right hand symptomatology. 

Therefore, the record shows that a rating in excess of 10 percent for the Veteran's service-connected loss of sensation in the right hand is not warranted. Throughout the appeal period, the Veteran subjectively reported intermittent numbness in the right hand, but EMG results were normal. Indeed, even when the Veteran reported worsening symptoms at the 2011 VA examination, she only described paresthesias lasting approximately fifteen minutes about once per day. Such symptoms do not reflect more than mild incomplete paralysis of the median nerve, and, accordingly, the criteria for a rating in excess of 10 percent have not been met.

Furthermore, no other diagnostic codes would be appropriate to evaluate the Veteran's right hand sensation. 38 C.F.R. § 4.1, 4.2; Schafrath, 1 Vet. App. at 595. As noted, the Veteran was diagnosed only with loss of sensation in the right hand, with no other neurological hand impairments noted in the record.

Additional Considerations

The Board has considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) has been raised under Rice v. Shinseki, 22 Vet. App. 447 (2009). In this case, TDIU was granted in an August 2014 rating decision, effective December 3, 2012, based on the Veteran's symptoms of her service-connected PTSD. Indeed, in filing her application for TDIU, the Veteran indicated that her mental health disorders (including PTSD), and not her asthma or loss of sensation in the right hand, prevented her from maintaining substantially gainful employment. She indicated that she last worked full-time in November Nonetheless, the Board finds that prior to December 3, 2012, Rice is inapplicable in this case, as neither the Veteran nor the evidence suggests that her asthma or loss of sensation in the right hand rendered her unemployable. To the contrary, VA examiners found no occupational effect due to asthma, and the Veteran only reported missing three days of work due to her right hand disability. 

Finally, the Board also has considered whether the Veteran is entitled to a greater level of compensation on an extraschedular basis. Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for the service-connected asthma and loss of sensation in the right hand are inadequate. A comparison between the level of severity and symptomatology of the Veteran's disabilities with the established criteria shows that the rating criteria reasonably describe his disability levels and relevant symptomatology. Specifically, the Veteran reported shortness of breath due to asthma that was intermittently managed by the use of an inhaler. Regarding the Veteran's right hand loss of sensation, the Veteran reported intermittent feelings of numbness and tightness. In short, the rating criteria reasonably describe the Veteran's disability levels and symptomatology. 

The Veteran has not expressly raised the matter of entitlement to an extraschedular rating. Her contentions have been limited to those discussed above, i.e., that her disabilities are more severe than is reflected by the assigned ratings. As was explained in the merits decision above in denying higher ratings, the criteria for higher schedular ratings were considered, but the ratings assigned were upheld because the rating criteria are adequate. Accordingly, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service-connected disabilities, and that referral for extraschedular consideration is not warranted under the circumstances of this case. Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014). 

Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014); Dingess/Harman v. Nicholson, 19 Vet. App. 473 (2006). Here, the duty to notify was satisfied by a July 2008 letter to the Veteran. 

Moreover, as it pertains to the claims for higher initial ratings, where, as here, service connection has been granted and the initial rating has been assigned, the claim of entitlement to service connection has been more than substantiated, as it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required, since the purpose that the notice was intended to serve has been fulfilled. Furthermore, once a claim for service connection has been substantiated, the filing of a notice of disagreement with the rating of the disability does not trigger additional 38 U.S.C.A. § 5103(a) notice. See Dunlap v. Nicholson, 21 Vet. App. 112 (2007); see also Goodwin v. Peake, 22 Vet. App. 128, 137 (2008).

Regarding the duty to assist, the Board is satisfied VA has made reasonable efforts to obtain relevant records and evidence. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The evidence of record includes service treatment records, private treatment records, VA treatment records, statements in support of the claim by the Veteran and her representative, and several VA examinations. 

When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). However, unless the claimant challenges the adequacy of the examination or opinion, the Board may assume that the examination report and opinion are adequate, and need not affirmatively establish the adequacy of the examination report or the competence of the examiner. Sickels v. Shinseki, 643 F.3d, 1362, 1365-66 (Fed. Cir. 2011); see also Rizzo v. Shinseki, 580 F.3d 1288, 1290-91 (Fed. Cir. 2009). In this case, the examination reports discussed herein are adequate because the examiners reviewed the Veteran's relevant medical history, recorded pertinent examination findings, and provided a sufficient analysis to support the conclusions rendered. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007). Moreover, the Veteran has not challenged the examinations' adequacy or thoroughness, or the competency of the examiners. Accordingly, VA's duty to provide a VA examination is satisfied. 

The Board also notes that January 2014 correspondence shows the Veteran applied for disability benefits from the Social Security Administration (SSA). However, the letter indicated that the Veteran's reason for retirement was her mental health conditions. Thus, SSA records need not be obtained with regard to the issues decided herein because the correspondence does not indicate such benefits are relevant to the issues decided herein. See Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010).

Based on the foregoing, no further notice or assistance to the Veteran is required for fair adjudication of the Veteran's claims decided herein. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).


ORDER

Entitlement to an initial rating in excess of 10 percent for service-connected asthma prior to February 25, 2011, and a compensable rating thereafter, is denied.

Entitlement to an initial rating in excess of 10 percent for service-connected loss of sensation of the right hand is denied.


REMAND

The Veteran's claim for entitlement to an initial rating in excess of 50 percent for service-connected PTSD with MDD must be remanded in order to ensure that the Veteran is provided with every opportunity for the full development of her claim.

The Veteran provided a statement in April 2013 stating that she was undergoing daily treatment for her mental health conditions at VA because she was being "watched for suicide." In January 2014, the Veteran reported inpatient treatment for suicidal ideation earlier that month. In April 2015, the Veteran was hospitalized at VA for suicidal ideation. However, the most recent mental health treatment records contained in the record is from 2011. As a result, a Remand is necessary to obtain VA treatment records from 2011, forward, in order to assess the severity of the Veteran's service-connected PTSD with MDD throughout the appeal period, given that the Veteran's claim was initially filed in July 2008.

Moreover, in a January 2014 statement, the Veteran's VA case manager indicated the Veteran retired in November 2012 due to her mental health conditions and had applied for Social Security Disability benefits thereafter. However, the record does not show that SSA records were requested in relation to her pending claim for entitlement to an initial rating in excess of 50 percent for service-connected PTSD with MDD. Therefore, the RO must also attempt to obtain these records on Remand. 

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the claims file all outstanding VA treatment records for any mental health conditions. All efforts to obtain these records should be documented for the claims file, and if they are ultimately deemed to be unobtainable, the appropriate memorandum for the file should be prepared.

2. Contact SSA and obtain a complete copy of any and all adjudications and the records underlying any adjudication for disability benefits. All efforts to obtain SSA records should be fully documented, and a negative response must be provided if records are not available.

3. Then, readjudicate the issue of entitlement to an initial rating in excess of 50 percent for service-connected PTSD with MDD, on the merits. If the benefit sought is not granted, provide the Veteran and her representative with a supplemental statement of the case and allow an appropriate opportunity to respond thereto. Then return the case to the Board, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs